FILED

2016 JUN 20 P 3: 23

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **ID.ME, INC.**<br>8281 Greensboro Drive, Suite 600<br>Tysons Corner, VA 22102<br><br>    Plaintiff,<br><br>v.<br><br>**MATTHEW THOMPSON**<br>8405 Greensboro Dr., Suite 930<br>McLean, VA 22102;<br><br>**MICHAEL FARNSWORTH**<br>7822 Silktree Place<br>Mechanicsville, VA 23111;<br><br>**JOHN S. LOWRY**<br>100 Keyes Road Apt. 214<br>Concord, MA 01742; and<br><br>**HEALTHIDX, INC.**<br>211 North Union Street, Suite 100<br>Alexandria, VA 22314,<br><br>    Defendants. | Case No. 1:16cv695<br>AJT/IDD |

## COMPLAINT

Plaintiff ID.me, Inc. ("ID.me"), for its complaint against Defendants Matthew Thompson, Michael Farnsworth, John S. Lowry, and HealthIDx, Inc. ("HealthIDx"), states as follows:

### PARTIES

1. Plaintiff ID.me is a Delaware corporation with its principal place of business in Tysons Corner, Virginia.

2. Defendant Thompson is an individual and resident of McLean, Virginia.

3. Defendant Farnsworth is an individual and resident of Mechanicsville, Virginia.

4. Defendant Lowry is an individual and resident of Concord, Massachusetts.

5. Upon information and belief, Defendant HealthIDx is a Delaware corporation with its principal place of business in Alexandria, Virginia.

## JURISDICTION AND VENUE

6. This action arises under the Lanham (Trademark) Act of July 5, 1946, as amended, 15 U.S.C. § 1051, *et seq.* ("Lanham Act") and the common law of the Commonwealth of Virginia.

7. This Court has original subject matter jurisdiction over the federal claims brought in this action (Counts I and II) pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

8. This Court has supplemental subject matter jurisdiction over the Virginia claim (Count III) pursuant to 28 U.S.C. § 1367.

9. This Court has personal jurisdiction over Defendants Thompson, Farnsworth, and HealthIDx because each of these Defendants resides in Virginia.

10. This Court has personal jurisdiction over Defendant Lowry because Lowry is the Chief Executive Officer of HealthIDx—a company that does business and has its principal place of business in Virginia—and, therefore, has substantial contacts with Virginia.

11. Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(b) and (c) because:

    a. three of the Defendants reside in this district;

    b. each Defendant has substantial contacts with, and conducts business within, this district;

    c. a substantial portion of the facts alleged in this Complaint occurred, and the causes of action arose, in this district; and

    d. each of the Defendants have caused tortious injury to ID.me in this district.

FACTUAL ALLEGATIONS

A. **ID.me's Business and the ID.ME® Trademark.**

12. In 2010, ID.me Chief Executive Officer Blake Hall and Defendant Thompson founded TroopSwap, Inc., which became ID.me in 2013.

13. ID.me is a recognized industry leader in digital identification technology products and services. ID.me's proprietary digital technology acts as a trusted intermediary by allowing individuals to securely and efficiently prove their legal identities (and certain attributes such as military status, student status, employment status, etc.) to third parties, thereby making digital interactions more trusted and secure. ID.me has used and developed its technology to create and market many products and services—including, but not limited to, the ID.me Wallet™—and additional capabilities, such as identity proofing, a credential broker, multifactor authentication, and other related methodologies for individuals to securely submit their identities online while protecting their privacy.

14. Among ID.me's many valuable successes since its founding was its 2013 receipt of a grant to participate in the President's National Strategy for Trusted Identities in Cyberspace program ("NSTIC"), administered by the National Institute of Standards and Technology ("NIST"). This significant accomplishment helped to establish ID.me as a company with significant potential in the identification technology industry.

15. Since then, ID.me, its founders, and its products and services have been featured in *WIRED* magazine, in the *Wall Street Journal*, and on Spike Television. In 2013, ID.me was a finalist for Wall Street Journal Startup of the Year. In 2014, *Entrepreneur* magazine featured ID.me in its list of "100 Brilliant Companies." Also in 2014, ID.me achieved the highest level of federal accreditation possible as a remote identity provider—a level of accreditation reached by only three other companies: Verizon, Symantec, and AthenaHealth. In 2016, the United States

3

Department of Veterans Affairs, the largest integrated healthcare provider in America, selected ID.me as the Identity and Access Management platform to power digital access to VA applications.

16. Since its founding, ID.me has continuously used the highly distinctive trademark ID.ME® to market and sell its products and services throughout the United States and the world.

17. ID.me has devoted substantial time, effort, and resources to the development and promotion of the ID.ME® mark and the products and services offered thereunder.

18. On July 9, 2013, ID.me applied to the USPTO for federal registration of its ID.ME® trademark.

19. On December 30, 2014, the USPTO issued U.S. Trademark Registration No. 4661818 for the ID.ME® mark in connection with:

   a. Providing electronic transmission of personal data via global and local computer networks;

   b. Computer services, namely, application service provider (ASP) featuring application programming interface (API) software for allowing data retrieval, upload, access and management for purposes of authentication of personal identification information; and

   c. Identification verification services, namely, providing authentication of personal identification information via secure storage and transmitting such information via the Internet.

**B. ID.me Expands Into the Health Care Field, Hires Defendants Lowry and Farnsworth, and Obtains Common-Law Trademark Rights in the HEALTHIDX Mark.**

20. In 2014, ID.me began to allocate significant resources to develop new products and services specifically tailored to the health care market.

21. As ID.me's Chief Operating Officer, Defendant Thompson had the primary responsibility of putting ID.me's health care expansion plans into action.

22. In August 2014, ID.me began a series of discussions with Defendant Lowry concerning ID.me's health care expansion plans—specifically, how to apply ID.me's authentication, privacy, and security technology to the needs of health care providers.

23. On October 16, 2014, Thompson presented a nascent health care expansion plan proposal, which included materials submitted by Defendant Lowry, to the ID.me Board of Directors. As a result of this presentation and further discussions, ID.me decided that the proposed plan aligned with ID.me's existing strategy and agreed to hire Lowry to manage ID.me's health care effort, which would be identified henceforth under the name HEALTHIDX.

24. On November 10, 2014, in advance of hiring Lowry, ID.me hired Defendant Farnsworth—a colleague of Lowry's—to be the Senior Architect in ID.me's new HealthIDx division. Among other duties, Farnsworth was assigned to assist Lowry, Thompson, and others in ID.me's creation and development of HealthIDx structure and technology.

25. On December 10, 2014, ID.me hired Lowry in the new position of General Manager of ID.me's HealthIDx division. Lowry's sole responsibility and assignment was to take the reins of HealthIDx and lead ID.me's expansion into the health care market.

26. In January 2015, Lowry sent emails to many of his contacts in the health care industry, informing them of his new position at ID.me and the creation of ID.me's HealthIDx division.

27. In March 2015, as part of its expansion effort, ID.me submitted a new proposal to NIST for a NSTIC grant ("NSTIC Grant") specifically for its HealthIDx health care initiative. This submission marked ID.me's first use of the HEALTHIDX trademark in commerce.

C.  **Defendants Thompson, Lowry, and Farnsworth Form a Competing Company, Use ID.me's ID.ME® and HEALTHIDX Trademarks without Authorization, Falsely Affiliate ID.me with Their Competing Company, and Misrepresent the Source of Their Competing Services.**

28. On or about April 15, 2015, Defendants Thompson, Farnsworth, and Lowry secretly incorporated a new company using, as the company name, ID.me's HEALTHIDX trademark. Defendants concealed the formation of this company from ID.me and did not seek or receive authorization to use HEALTHIDX as the new company name.

29. Soon thereafter, Thompson, Farnsworth, and Lowry surreptitiously began working on their own proposal for the NSTIC Grant to submit to NIST in the name of their new company, Defendant HealthIDx, despite having just drafted and submitted a similar proposal on behalf of their then-employer, ID.me.

30. During Defendants' development of this new, secret proposal—which, as discovered later, closely aligned with and built upon ID.me's own healthcare expansion plans—Defendants liberally used not only ID.me's HEALTHIDX mark but also the ID.ME® mark, both without the authorization of ID.me.

31. For example, on May 1, 2015, Defendants used both the HEALTHIDX and ID.ME® marks in a proposal made to a third-party company for the purpose of enlisting the company as a partner in Defendants' NSTIC bid. Most egregiously, Defendants used the ID.ME® mark in this proposal with the intent to mislead the potential partner into believing that Defendants were acting on behalf of ID.me.

32. On May 17, 2015, Defendants reaffirmed their intent to mislead the potential partner and expressed their concern about what the company might do if it discovered the truth behind their proposal.

**D. ID.me Terminates Defendants Thompson, Farnsworth, and Lowry and NIST Awards the Grant to Defendant HealthIDx.**

33. On May 26, 2015, ID.me terminated Farnsworth and Lowry from their employment at ID.me.

34. Also on or about May 26, 2015, ID.me and Thompson mutually terminated their employment relationship.

35. On May 28, 2015, only two days after ID.me terminated Lowry and Farnsworth, Defendant HealthIDx, through Lowry, Farnsworth, and Thompson, submitted to NIST its competing proposal for the NSTIC Grant.

36. During the selection process, Defendant HealthIDx presented its proposal to NIST in person. Defendants' PowerPoint slides for this presentation—authored by Thompson, among others—contained not only continued unauthorized use of the HEALTHIDX mark, but also prominently featured the ID.ME® mark and stylized logo on a slide falsely identifying ID.me as a participant in Defendants' proposed project.

37. On or about July 1, 2015, NIST awarded a $1.6 million NSTIC Grant to Defendant HealthIDx.

38. Had Defendants not misled NIST with their unauthorized use of ID.me's trademarks and their false representations that ID.me was to be a participant in the project, Defendants would not have secured the participation of necessary partners for the grant proposal and therefore would not have ultimately received the NSTIC Grant.

**E. Defendants Continue to Use ID.me's ID.ME® and HEALTHIDX Trademarks to Mislead and Confuse the Public about the Source of Their Services.**

39. Well after the termination of the ID.me employment of Farnsworth, Lowry, and Thompson, Defendants continued to falsely represent their affiliation with ID.me by, among other things, continuing to use ID.me's trademarks without authorization.

7

40. For example, in late June 2015, weeks after they were terminated, Thompson and Lowry continued to communicate with third parties regarding Defendant HealthIDx-related business *using their ID.me email addresses*. Moreover, Lowry continued to identify himself as ID.me's General Manager for Healthcare.

41. Lowry also sent emails to third parties from his "healthidx.com" address. Not only is this domain name an unauthorized use of ID.me's HEALTHIDX trademark, but the emails themselves continued to reference a non-existent affiliation between ID.me and Defendants.

42. On July 30, 2015, Lowry signed an amendment to an *ID.me contract* as CEO of HealthIDx. This was both an unauthorized use of ID.me's HEALTHIDX trademark and a fraudulent attempt to confuse ID.me and HealthIDx.

43. In or about October 2015, a reporter from SecureIDNews, a trade publication, interviewed Lowry about Defendant HealthIDx. In a blatant attempt to continue to trade on ID.me's goodwill in the industry and to mislead the public as to the origin of Defendants' services, Lowry falsely claimed in the interview that Defendant HealthIDx was a "spin-off" of ID.me. SecureIDNews then published Lowry's false claim.

44. Defendants' continued unauthorized use of ID.me's trademarks is likely to confuse, mislead, and deceive customers, business partners, and other third parties as to the source of the services provided by Defendants.

45. ID.me has never consented to, sponsored, endorsed, or approved of Defendants' use of ID.me's trademarks in connection with the manufacture, marketing, or sale of any services.

46. Defendants' actions are willful and reflect an intent to confuse third parties and to profit from the goodwill and reputation associated with ID.me's trademarks. For example, as of the date of this Complaint, Defendants continue to use ID.me's HEALTHIDX trademark without authorization as Defendant HealthIDx's Internet domain name. This, among other things, demonstrates a deliberate intent by Defendants to continue infringing ID.me's rights in its trademarks.

## COUNT I
### Federal Trademark Infringement under 15 U.S.C. §§ 1114
### (ID.ME®)

47. ID.me realleges and incorporates herein the allegations contained in paragraphs 1-46 of this Complaint.

48. ID.me's ID.ME® mark is a federally-registered trademark.

49. Defendants had both actual and constructive knowledge of ID.me's ownership of and rights in its ID.ME® trademark prior to Defendants' infringing use of the mark.

50. Defendants have used and continue to use the ID.ME® trademark in commerce to advertise, promote, market, and sell Defendants' services with full knowledge of ID.me's superior rights and with full knowledge that their infringing uses of the mark were and are intended to cause confusion, mistake, and/or deception.

51. Defendants' uses of the ID.ME® trademark are likely to cause, and have actually caused, confusion, mistake and/or deception as to the affiliation, connection, or association of Defendants' services with ID.me in violation of 15 U.S.C. §§ 1114.

52. As a result of Defendants' infringement, ID.me has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the ID.ME® mark and injury to ID.me's business.

9

53. The actions of Defendants, if not enjoined, will continue. ID.me's continuing loss of goodwill cannot be adequately calculated and thus constitutes irreparable harm and an injury for which ID.me has no adequate remedy at law. ID.me is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

54. Defendants' actions were undertaken willfully, deliberately, knowingly, and with the intention of causing confusion, mistake, or deception, making this an exceptional case under 15 U.S.C. § 1117 and entitling ID.me to recover treble damages and reasonable attorney's fees.

## COUNT II
### Federal Unfair Competition and False Designation of Origin under 15 U.S.C. § 1125(a)
### (ID.ME® and HEALTHIDX)

55. ID.me realleges and incorporates herein the allegations contained in paragraphs 1-54 of this Complaint.

56. ID.me's ID.ME® mark is a federally-registered trademark.

57. ID.me has federal and state common law trademark rights in the mark HEALTHIDX.

58. Defendants had both actual and constructive knowledge of ID.me's ownership of and rights in its ID.ME® and HEALTHIDX trademarks prior to Defendants' infringing use of the marks.

59. Defendants have used and continue to use the ID.ME® and HEALTHIDX trademarks in commerce and have willfully, deliberately, and knowingly attempted to trade on ID.me's goodwill in its name, its ID.ME® trademark, and its HEALTHIDX trademark for the purpose of causing confusion as to the origin and sponsorship of Defendants' services and to pass off their services as those of ID.me.

60. Defendants' actions have deprived and will continue to deprive ID.me of the ability to control the perception of its products and services offered under its ID.ME® and HEALTHIDX trademarks.

61. Defendants' actions are likely to cause, and have actually caused, confusion, mistake and/or deception as to the origin of Defendants' services and Defendants' affiliation, connection, or association with ID.me and therefore constitute unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a).

62. As a result of Defendants' willful and intentional actions, ID.me has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the ID.ME® and HEALTHIDX trademarks and injury to ID.me's business.

63. The actions of Defendants, if not enjoined, will continue. ID.me's continuing loss of goodwill cannot be adequately calculated and thus constitutes irreparable harm and an injury for which ID.me has no adequate remedy at law. ID.me is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

64. Defendants' actions were undertaken willfully, deliberately, knowingly, and with the intention of causing confusion, mistake, or deception, making this an exceptional case under 15 U.S.C. § 1117 and entitling ID.me to recover treble damages and reasonable attorney's fees.

**COUNT III**
**Trademark Infringement and Unfair Competition under Virginia Common Law**
**(ID.ME® and HEALTHIDX)**

65. ID.me realleges and incorporates herein the allegations contained in paragraphs 1-64 of this Complaint.

66. ID.me's ID.ME® mark is a federally-registered trademark.

67. ID.me has federal and state common law trademark rights in the mark HEALTHIDX.

68. Both the ID.ME® and HEALTHIDX trademarks have acquired a distinctiveness and secondary meaning in relation to ID.me's products and services within the Commonwealth of Virginia.

69. Defendants had both actual and constructive knowledge of ID.me's ownership of and rights in its ID.ME® and HEALTHIDX trademarks prior to Defendants' infringing use of the marks.

70. Defendants have used and continue to use the ID.ME® and HEALTHIDX trademark in commerce to advertise, promote, market, and sell Defendants' services with full knowledge of ID.me's superior rights and with full knowledge that their infringing uses of the mark were and are intended to cause confusion, mistake, and/or deception.

71. Defendants' uses of the ID.ME® and HEALTHIDX trademarks are likely to cause, and have actually caused, confusion, mistake and/or deception as to the affiliation, connection, or association of Defendants' services with ID.me, and as to the origin of Defendants' services, and therefore constitute trademark infringement and unfair competition under the common law of Virginia.

72. As a result of Defendants' willful and intentional actions, ID.me has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the ID.ME® and HEALTHIDX trademarks and injury to ID.me's business.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ID.me respectfully requests that this Court enter judgment in its favor, and against each of the Defendants, jointly and severally, and prays that this Court:

(a) Grant preliminary and permanent injunctive relief enjoining Defendants and all others acting in concert with and having knowledge thereof from using either of the ID.ME® and HEALTHIDX trademarks or any similar trade name or mark or variant thereof as a trade name, trademark, service mark, domain name, or for any other purpose;

(b) Order Defendants to account to ID.me for any and all revenues and profits that Defendants have derived from their wrongful actions and to pay all damages which ID.me has sustained by reason of the acts complained of herein in an amount not less than $1.9 million, and that such damages be trebled;

(c) Award ID.me the costs of this action and reasonable attorneys' fees and expenses;

(d) Award ID.me punitive damages;

(e) Award ID.me pre-judgment and post-judgment interest;

(f) Order the registrar of the heathidx.com domain name to cancel or transfer the registration to ID.me; and

(g) Grant such other and further relief as the Court should deem just.

### DEMAND FOR JURY TRIAL

Plaintiff ID.me hereby demands a trial by jury on all issues for which a trial by jury may be had.

Respectfully Submitted,

Date: June 20, 2016                    By: _____
Craig A. Guthery, VSB #42821
Milton C. Johns, VSB #42305
Jill F. Helwig, VSB #83202
**FH+H, PLLC**
13580 Groupe Drive, Suite 200
Woodbridge, VA 22192
cguthery@fluetlaw.com
mjohns@fluetlaw.com
jhelwig@fluetlaw.com
Phone: (703) 590-1234
Facsimile: (703) 590-0366

*Counsel for Plaintiff ID.me, Inc.*